IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **REMY L. SUANE,** **#B52215,**   **Plaintiff,**   v.   **P. MEYERS,** **WEXFORD HEALTH,** **ROB JEFFREYS,** **KRISTY FOGERSON,** **CLINT HEMANN,** **STEVEN BOWMEN,** **DANIEL MONTI, and** **HARRIS,**   **Defendants.** | Case No. 22-cv-02716-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Remy Suane, an inmate of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for constitutional deprivations that occurred at Centralia Correctional Center ("Centralia"). On December 5, 2022, Plaintiff submitted a motion titled "motion to submit a complete complaint." (Doc. 8). Plaintiff believes that when initiating this lawsuit, the Complaint the Court received was missing pages. Plaintiff requests to submit a new complaint to ensure all pages were filed correctly. The motion is **GRANTED.** The Clerk will be directed to file the documents attached to the motion as the "First Amended Complaint."

The First Amended Complaint is now before the Court for review pursuant to 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, meritless, or asks for money damages from a defendant who by law is immune from such relief

must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE FIRST AMENDED COMPLAINT

Plaintiff states that he suffers from several medical conditions, which include lateral hernia, mild fatty degeneration, degenerative joint disease of the spine, urinary issues, high blood pressure, high cholesterol, obesity, and asthma. (Doc. 8-2, p. 33, 35, 44). His conditions cause him severe chronic pain. Plaintiff alleges that since his transfer to Centralia, he has received inadequate medical care.

### I.    Pain Medication

Prior to his transfer to Centralia, Plaintiff had issues with receiving proper pain medication from IDOC medical providers. (Doc. 8-2, p. 29). On March 16, 2021, Dr. Williams prescribed hydrocodone. (*Id.*). Plaintiff states that while taking this pain medication, he "was doing fine again." Plaintiff transferred to Centralia on July 21, 2021. On October 23, 2021, Plaintiff completed his hydrocodone prescription. Dr. Meyers, Plaintiff's new treating physician at Centralia, refused to refill the hydrocodone prescription. Plaintiff states that hydrocodone is a dangerous drug and should not be immediately discontinued but patients should be tapered off the drug slowly. Dr. Meyers offered other medications, which Plaintiff tried for months, but they did alleviate his pain. (*Id.*).

Without hydrocodone, Plaintiff is not able to physically function. (Doc. 8-2, p. 29). He has a hard time walking, sitting up and standing for long periods of time, showering, and using the bathroom. Plaintiff experiences constant pain in his lower back, which causes difficulty sleeping. (*Id.*). Plaintiff explained these symptoms to Dr. Meyers, but Meyers continued to prescribe ineffective medication, including naproxen and Tylenol. (*Id.* at p. 30). Meyers did not review

Plaintiff's medical record to see that these medications have been previously tried by other medical providers and did not work to treat Plaintiff's pain. Meyers even attempted to prescribe him Pamelor. Plaintiff is bipolar, and it is documented in his medical history that Pamelor gives him suicidal and homicidal thoughts. (*Id.*).

Since his pain medication was taken away, Plaintiff has suffered in pain daily. (Doc. 8-2, p. 36).

## II. Mental Health Medication

Because of his severe pain, Plaintiff cannot always walk to the "medline" to receive his mental health medication. (Doc. 8-2, p. 30). License Practical Nurse Kristy Fogerson started writing Plaintiff disciplinary tickets for not showing up for medline, despite knowing he is in severe pain. Fogerson states she is following IDOC policy, but she is the only nurse who writes him tickets for missing medline due to his disability. (*Id.*).

Plaintiff states that when he arrived a Centralia, Dr. Elisa Bell, a psychiatrist, placed him on an antianxiety medication called Klonopin. (Doc. 8-2, p. 40). Plaintiff contends that was "doing fin" on this medication. One day, he was seen by Dr. Chinweze, because Bell was unavailable. Chinweze had previously treated Plaintiff at Lawrence Correctional Center and stopped prescribing Klonopin to Plaintiff. During the televisit, Chinweze said, "I see they put you back on hydrocodone and I see you talked them into putting you back on Klonopin." Plaintiff states she seemed mad. (*Id.*). During his next mental health visit with Bell, Bell told Plaintiff that she had to take him off the Klonopin because Chinweze called the medical director and complained that Plaintiff was taking Klonopin again. (*Id.* at p. 41). Bell said she was sorry. (*Id.*).

## III. Delayed Care

Since arriving at Centralia, Plaintiff also claims he has not received proper treatment for his other medical conditions. After his transfer, he asked Meyers to send him for a CT scan and to

a new general surgeon for his hernia. Meyers refused. (Doc. 8-2, p. 32-33).

Plaintiff submitted a request to be seen by health care for difficulties breathing and lower abdomen pain on February 27, 2022. (Doc. 8-2, p. 33). He again submitted requests on March 6 and 12, 2022, for breathing issues, abdominal pain, "left flank swollen," back pain, constipation, and bloating. Plaintiff's requests went ignored. On March 16, 2022, Plaintiff saw Physician Assistant Smith for a previously scheduled appointment for chronic asthma, cholesterol, and high blood pressure – he was not seen for the issues complained of in his March request slips. Smith put in a request for Plaintiff to be seen by a surgeon and took x-rays. (*Id.*). Smith, who was new at the facility, could not figure out why Meyers had allowed Plaintiff's cholesterol and blood pressure medications to stop without a follow-up exam. Smith also took time to address the issues complained of in the request slips previously submitted. (*Id.*).

On March 24, 2022, Plaintiff submitted a fourth request slip to be seen for the issues complained in the February 27 and the March 6 and 12 request slips. (Doc. 8-2, p. 33). He also complained of problems urinating. This request slip was also ignored. (*Id.*).

On April 13, 2022, Plaintiff's over the counter medications "were taken away." (Doc. 8-2, p. 35). These medications included ibuprofen, Tylenol, Flomax, Pepcid, and mediations for cholesterol and blood pressure. (*Id.*). Plaintiff was forced to leave his cell and go to medline to receive his medicine. On days he would not go because of his pain, Fogerson would write him disciplinary tickets. (*Id.*).

On April 15, 2022, Plaintiff had an appointment with an outside doctor, Dr. Brandt, for his hernia. (Doc. 8-2, p. 33, 45). Brandt requested a CT scan and prescribed diet pills and a diet meal. Brandt also recommended exercise and recorded that weight loss would assist in reducing Plaintiff's pain. (*Id.* at p. 55). Upon his return, a nurse told Plaintiff that the CT scan would need to be approved, and Plaintiff would need to see Meyers about receiving diet pills. (*Id.* at p. 34).

On April 19, 2022, Plaintiff had an appointment with Meyers to follow-up after the appointment with Brandt. (Doc. 8-2, p. 34). Meyers insisted that a CT scan was not ordered, and diet pills were not recommended by Brandt. He tried to show Plaintiff old medical records to convince Plaintiff that Brandt had not ordered any medication. The records Meyers showed Plaintiff were not from the April 15 visit. During this appointment, Plaintiff also tried to tell Meyers he was seeing blood in his urine and underwear. Meyers told Plaintiff to put in a medical request and that the appointment was only to discuss the appointment with Brandt. (*Id.*).

Plaintiff had an appointment with Smith on April 28, 2022. Smith increased Plaintiff's Flomax prescription to treat his urination issues. Smith also prescribed Tylenol and referred Plaintiff for the CT scan. (Doc. 8-2, p. 35). Smith informed Plaintiff that the diet pills were only a recommendation from Brandt, and "they have the option to give [him] the diet pills or not." (*Id.*). Plaintiff asked Smith why his over-the-counter medications "were taken away." Smith responded, "the higher ups." Plaintiff was told by a nurse that Warden Harris came to the medical unit asking about Plaintiff's medical care. Plaintiff states that Smith had prescribed him double the medications because Meyers had kept poor medication records and wanted to ensure Plaintiff had all the medication he needed.

On May 23, 2022, Plaintiff had the CT scan. (Doc. 8-2, p. 36). Plaintiff discovered that the referral for a CT scan was signed by Smith on April 18, a day before his appointment with Meyers in which Meyers falsely stated that a CT scan had not been ordered by Brandt. (*Id.*).

In June, Plaintiff had an appointment with Meyers, and he asked to have his over-the-counter medications returned. (Doc. 8-2, p. 38). Meyers gave Plaintiff the medications.

Plaintiff then developed right hip pain and severe back pain. He was placed on the doctor's list on July 16, 2022, and again on August 2 and 22, 2022, but still did not see a doctor. (*Id.*).

In July, Plaintiffs low bunk permit and waist chain permit expired. (Doc. 8-2, p. 42).

Plaintiff's low bunk permit was renewed on August 24, 2022, but Meyers did not renew the waist chain permit. Plaintiff's slow walk permit expired on August 17, 2021. Plaintiff was seen by a nurse on August 30 who told him his low bunk permit had been renewed. Plaintiff was referred to the medical director for evaluation for renewal of the other two permits. On September 23, 2022, Plaintiff was seen by Dr. Butalid, who renewed both permits. Even though his permits were renewed, he does not have copies to show to staff. (*Id.*).

Plaintiff states that because Centralia has a shortage of medical staff, doctors and nurses, his care has been delayed and prevents him from receiving adequate care. Dr. Meyers only visits the facility for ten hours a week, and a nurse told Plaintiff that there are one thousand inmates on the doctor's waiting list. (Doc. 8-2, p. 37). Plaintiff asserts that he continues to suffer from pain, urinates on himself, still has a swollen side, and is constipated but remains on a waiting list to see a doctor, which can take months. (*Id.* at p. 44). He alleges that rather than sending him to a doctor at an outside facility for proper testing, he keeps being prescribed medicine that does not help with his medical issues.

### PRELIMINARY ISSUES

Plaintiff seeks an order requiring the "Lippert v. Jeffreys agreement [to be] honored." (Doc. 8-2, p. 39, 49). To the extent that Plaintiff seeks injunctive relief in the form of ordering Defendants to comply with the consent decree entered in the class action *Lippert v. Ghosh,* Case No. 10-cv-4603 (N.D. Ill.), such request is denied. The *Lippert* consent decree includes a dispute resolution provision for those who "believe that the defendants are not in substantial compliance with any provision of the decree." *Orr v. Shicker,* 953 F. 3d 490, 496 (7th Cir. 2020). Thus, Plaintiff would need to seek relief in that case.

The Court also dismisses any claims brought against Defendant Clint Hemann. Plaintiff claims that Hemann is the acting health care unit administrator and insists that Plaintiff's medical

permits are expired, even after the permits were renewed and Hemann was showed the permits by a nurse. (Doc. 8-2, p. 43). Plaintiff asserts that because Hemann believes the permits are expired, he does not have copies of the permits to personally keep. Without copies to show staff, he could be forced to walk with regular line movement or be placed in hand cuffs behind his back, both of which would be detrimental to his health. (*Id.* at p. 42-43). The Court does not find that these allegations state a constitutional claim. There is not an independent constitutional right to keep a copy of his medical permits personally with him, and Plaintiff does not allege that anyone has disregarded the permits after they were renewed. Hemann's failure to acknowledge that the permits were renewed does not rise to the level of a constitutional violation.

The Court also dismisses any claim Plaintiff is attempting to bring against Dr. Chinweze or Dr. Bell for the discontinuation of the medication Klonopin and inadequate treatment of his mental health conditions. Neither doctor is named as a defendant in this case, and the Court will not treat individuals not listed in the caption as defendants. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005).

### DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following Counts:

**Count 1:** Eighth Amendment claim against Dr. Meyers, Jeffreys, Bowman, Monti, and Harris for deliberate indifference to Plaintiff's chronic pain by continuing with an ineffective treatment plan.

**Count 2:** Eighth Amendment claim against Dr. Meyers, Jeffreys, Bowman, Monti, and Harris for failing to provide adequate medical care for Plaintiff's serious medical conditions.

**Count 3:** Eighth Amendment claim against Wexford for denying Plaintiff adequate medical care in order to reduce costs.

**Count 4:** ADA claim against Fogerson for writing Plaintiff disciplinary tickets when he is unable to walk to medline.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the** *Twombly*[1] **pleading standard.**

### Counts 1 and 2

Plaintiff's assertion that Meyers has provided him constitutionally inadequate treatment for his chronic pain by continuing to prescribe him ineffective pain medication and failing to refer him to a pain specialist is sufficient to state an Eighth Amendment claim. (Doc. 8-2, p. 29-30). Count 1 will proceed against Meyers.

Not only does Plaintiff take issue with Meyers's treatment decisions concerning his chronic pain, but Plaintiff asserts that Meyers has not provided proper care for his other medical conditions including constipation, urination issues, difficulties breathing, hernia, high cholesterol, and high blood pressure. (Doc. 8-2, p. 33-36). Count 2 will proceed against Meyers for the inadequate and delayed treatment he has provided to Plaintiff for Plaintiff's other serious medical needs.

Plaintiff also attempts to hold administrative officials liable for the inadequate medical care he has received. A prisoner may be able to proceed with a deliberate indifference claim against a non-medical prison officials if that person was made aware that the prisoner's serious medical condition was not being treated by prison medical providers yet took no action to assist in obtaining care for the prisoner. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). Plaintiff alleges that he sent IDOC Director Jeffreys, Medical Director Bowman, Warden Monti, and Warden Harris notarized letters grieving the inadequate health care he has been receiving, and they have failed to act. (Doc. 8-2, p. 39). He also wrote grievances that were reviewed by Monti and Jeffreys. Plaintiff asserts he personally spoke to Warden Monti and Harris about his medical issues. (Doc.

---

[1] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

8-2, p. 34, 38). At this stage, Plaintiff has sufficiently claimed that he put Defendants on notice of his medical issues, and they failed to act. Counts 1 and 2 will also proceed against Jeffreys, Bowman, Monti, and Harris for turning a blind eye to the constitutionally inadequate care Plaintiff is receiving.

### Count 3

Plaintiff claims that the delay and inadequate care he is receiving is due to cost saving practices on the part of Wexford. "Everything that involves Wexford Health revolves around money and there[sic] profits." (Doc. 8-2, p. 30). He states that Wexford employs "traveling doctors," rather than a full-time doctor at each IDOC facility in order to save money. (*Id.* at p. 44). Plaintiff asserts that because there is not a full-time doctor at Centralia there has been severe delays in his care causing him more medical issues. (*Id.* at p. 45). Plaintiff also claims that considering cost over proper patient care has impacted treatment decisions concerning prescriptions and outside referrals. (*Id.* at p. 30, 36). These allegations are sufficient for Count 3 to proceed against Wexford.

### Count 4

To establish claim under the Americans with Disabilities Act ("ADA"), "the plaintiff must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability.'" *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (quoting 42 U.S.C. § 12132).

Plaintiff's allegation that Fogerson violated the ADA by writing him disciplinary tickets for not attending medline on days his pain was severe does not state a claim. He alleges no discrimination based on any disability. In fact, he states that Fogerson writes *all* inmates who refuse to attend medline disciplinary tickets. (Doc. 8-2, p. 30). Furthermore, an individual

employee of the Illinois Department of Corrections cannot be sued under the ADA. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). To sue under the ADA, the proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670 n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director in his official capacity). Accordingly, Count 4 is dismissed.

### MOTION FOR CHANGE OF VENUE

Plaintiff has filed a motion requesting a change of venue. (Doc. 13). He believes that there may be a conflict of interest because his other civil case is also assigned to the undersigned judge and the attorneys representing Wexford and IDOC employees are litigating other cases before the undersigned. Plaintiff also states that he would like his case reviewed faster and believes that a change of venue will allow his case to receive a merit review more quickly.

Based on these arguments, Plaintiff appears to be seeking recusal of the undersigned from this case, rather than a transfer of venue. [2] Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The statute also provides a number of circumstances in which a judge shall disqualify himself, for example, where he or she is related to a party, has a financial interest in the outcome, or has a personal bias or prejudice concerning a party.

Plaintiff has failed to demonstrate that recusal is warranted in this matter. A party's dissatisfaction with the rate of progress in the case is not one of the grounds for disqualification. Furthermore, Plaintiff has not shown any personal bias, prejudice or issue of impartiality on the part of the undersigned. He believes there may be a conflict of interest because Defendants and their attorneys have appeared before the undersigned in other cases, but every judge in this district

---

[2] *See Martin-Trigona v. Gouletas,* 634 F. 2d 354, 355 n. 1 (7th Cir. 1980) ("[m]otions for recusal are properly addressed only to the judge who is the object of the motion). *See also Liteky v. United States*, 510 U.S. 540, 548 (1994) (noting that Section 455 "place [s] the obligation to identify the existence of [grounds for recusal] upon the judge himself").

has numerous cases involving employees of IDOC and Wexford. Thus, there is not any "compelling evidence" of bias or prejudice in this matter. *See Grove Fresh Distribs., Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 640 (7th Cir. 2002). The motion for change of venue is **DENIED.** (Doc. 13).

### MOTION FOR SERVICE OF PROCESS AT GOVERNMENT EXPENSE

Plaintiff has filed a motion for service of process at Government Expense with the original Complaint (Doc. 3) and the First Amended Complaint (Doc. 8-2, p. 48). Both motions are **DENIED as moot,** as Plaintiff has been granted leave to proceed *in forma pauperis.*

### DISPOSITION

The Motion to Submit a Complete Complaint is **GRANTED.** (Doc. 8). The Clerk of Court is **DIRECTED** to file the attachments to the motion as the "First Amended Complaint." (Doc. 8-1, 8-2, 8-3).

For the reasons stated above, the First Amended Complaint survives preliminary review pursuant to Section 1915A. **COUNTS 1** and **2** shall proceed against Meyers, Jeffreys, Bowman, Monti, and Harris. **COUTN 3** shall proceed against Wexford Health. **COUNT 4** is **DISMISSED without prejudice.** All claims against Fogerson and Hemann are **DISMISSED without prejudice,** and the Clerk of Court is **DIRECTED** to **TERMINATE** them as defendants.

Because Plaintiff's claims involve his medical care, the Clerk is further **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Meyers, Jeffreys, Bowman, Monti, Harris, and Wexford Health the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to each

defendants' place of employment. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants should respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   July 26, 2023**

                                                *s/Stephen P. McGlynn*
                                                **STEPHEN P. MCGLYNN**
                                                **United States District Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.