IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **REMY L. SUANE,** **#B52215,**         Plaintiff, v. **PERCY MEYERS,** **WEXFORD HEALTH SOURCES, INC.** **ROB JEFFREYS,** **STEVEN BOWMEN,** **DANIEL MONTI, and** **VONETTA HARRIS,**         Defendants. | Case No. 22-cv-02716-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a motion for preliminary injunction filed by Plaintiff Remy Suane. (Doc. 10). The Court held a hearing on the motion on December 19, 2020. For the following reasons stated below and on the record, the motion is denied.

### MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Remy Suane, an inmate of the Illinois Department of Corrections ("IDOC") commenced this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Plaintiff states he suffers from several medical conditions, which include lateral hernia, mild fatty degeneration, degenerative joint disease of the spine, urinary issues, high blood pressure, high cholesterol, obesity, and asthma. His conditions cause him severe chronic pain. Plaintiff alleges that since his transfer to Centralia Correctional Center ("Centralia"), he has received inadequate medical care. Plaintiff is proceeding on the following claims:

> **Count 1:** Eighth Amendment claim against Dr. Meyers, Jeffreys, Bowman, Monti, and Harris for deliberate indifference to Plaintiff's chronic pain by continuing with an ineffective treatment plan.
>
> **Count 2:** Eighth Amendment claim against Dr. Meyers, Jeffreys, Bowman, Monti, and Harris for failing to provide adequate medical care for Plaintiff's serious medical conditions.
>
> **Count 3:** Eighth Amendment claim against Wexford for denying Plaintiff adequate medical care in order to reduce costs.

(Doc. 15).

On October 10, 2023, Plaintiff filed a motion for a preliminary injunction. (Doc. 41). In the motion, Plaintiff states that on July 26, 2023, he was seen by an outside urologist, Dr. Reagan. Dr. Reagan recommended that another appointment be scheduled. At this second appointment, Dr. Reagan planned on performing a cystoscopy, which is a procedure to look inside the bladder using a camera. (*Id.*; Doc. 46, p. 2). But months have passed, and Plaintiff has not been scheduled for this procedure. (Doc. 41, p. 1). Similarly, Dr. Caldwell, a doctor at Centralia, submitted a request for Plaintiff to be seen by a neurologist on March 30, 2023, and again on August 22, 2023, and Plaintiff has still not had an appointment. (*Id.* at p. 1-2). Plaintiff states that he is suffering from severe chronic pain and continues to urinate on himself. (*Id.* at p. 3). He asks the Court to order that he be sent to these outside specialists for appointments, in accordance with existing referrals. Plaintiff also requests for the Court to direct that he be prescribed hydrocodone in the meantime to manage his pain. (*Id.* at p. 4; Doc. 46, p. 1).

Defendants have filed responses in opposition to the motion. (Doc. 43, 47). Plaintiff filed a reply and supplemental brief. (Doc. 48, 49). On December 19, 2023, the Court held a hearing on the motion. During the hearing, the Court heard testimony from Defendant Dr. Myers, Staff Assistant Pamela Sessions, and Plaintiff.

## ANALYSIS

To obtain a preliminary injunction, a plaintiff must demonstrate that (1) he will suffer irreparable harm if he does not obtain the requested relief; (2) traditional legal remedies are inadequate; and (3) he has some likelihood of prevailing on the merits of his claim. *See Mays v. Dart*, 974 F.3d 810 (7th Cir. 2020) (citing *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). Because preliminary injunctive relief is "an extraordinary and drastic remedy," it should not be granted "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). Additionally, in the context of prisoner litigation, the scope of the Court's authority to enter an injunction is circumscribed by the Prison Litigation Reform Act ("PLRA"). *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer*, 682 F.3d at 683.

The Court finds that Plaintiff has not demonstrated he will suffer irreparable harm absent a preliminary injunction during the pendency of this action. At the hearing, Pamela Sessions, the individual responsible for scheduling medical furloughs at Centralia, testified that Plaintiff has been scheduled for the following appointments: (1) a nerve conduction study in February 2024; (2) a cystoscopy and a post procedure appointment in January 2024; and (3) a generally surgery consultation for his hernia in December 2023. Plaintiff testified that he received an MRI the day before the hearing, on December 18, 2023. Thus, as to his request for the Court to order Defendants to "honor" physician recommendations and referrals, he has already received the relief he is seeking, and there is no threat of immediate or irreparable injury without Court interference. (*See* Doc. 41, p. 4).

The Court will also not order Defendants to prescribe Plaintiff hydrocodone. As the Seventh Circuit has observed, "[o]rdering a specific drug for a prison inmate is an exercise of medical judgment and requires proof that prison officials have 'refus[ed] to provide [the] inmate with prescribed medication or to follow the advice of a specialist.'" *See Knox v. Shearing,* 637 F. App'x 226, 229 (7th Cir. 2016) (quoting *Arnett v. Webster,* 658 F. 3d 742, 753 (7th Cir. 2011). Here, Plaintiff has not presented any evidence that Defendants are withholding prescribed medication or that any medical professional has advised that he be prescribed hydrocodone at this time. During the hearing, Dr. Myers testified that hydrocodone, a controlled narcotic, is not prescribed for long term use within the Illinois Department of Corrections due to numerous complications associated with this medication. Dr. Myers stated that hydrocodone can have negative impacts on the nervous and circulatory systems, causing blood pressure to rise and the heart to race. It also can cause sleep interference and an increased risk of fractures and addiction. He testified that the Food and Drug Administration and the Centers for Disease Control have found that treating pain with an NSAID, such as Naproxen, in combination with Tylenol is just as effective as controlling the pain with a narcotic and has fewer side effects. Dr. Myers stated that in his medical opinion, it is not medically necessary to prescribed hydrocodone to Plaintiff at this time. Plaintiff testified that while at Centralia he has been treated by Dr. Myers and recently, two other physicians, Dr. Caldwell and Dr. Babich. Plaintiff stated that none of these physicians have told him that hydrocodone is medically necessary for treating his pain nor have they prescribed him hydrocodone.

Although Plaintiff has received hydrocodone in the past, and he "believes it will help him if given again, the Eighth Amendment does not entitle inmates to demand specific care, nor does it authorize courts to decide questions of medical care on the basis of lay opinion." *Knox,* 637 F.

App'x at 229 (internal citations omitted). Furthermore, "ordering prison officials to provide an inmate with an opioid medication is a substantial interference with prison administration." *Id.* As discussed above, Plaintiff is receiving on-going care and has been granted referrals for further treatment, albeit at a slow pace. He has had an MRI and a nerve conduction study is scheduled. Dr. Myers testified that once the results of both diagnostic tests are received then the next steps to take in Plaintiff's treatment will be determined. In the meantime, Plaintiff's pain continues to be treated with Naproxen, Tylenol, lidocaine patches, and more recently Ultram (Tramadol). Directing Defendants to prescribe Plaintiff a specific medicine would directly contradict the provisions of the PLRA requiring courts to limit injunctive relief to the "least intrusive means" to correct the harm. *See* 18 U.S.C. §3626(2). Accordingly, the Court will not order Defendants to prescribe hydrocodone.

### REQUEST FOR COUNSEL

During the hearing and in his supplemental reply brief, Plaintiff has requested the Court to recruit him counsel. (Doc. 49). Plaintiff states that due to his pain, he cannot sit for long periods of time conducting research at the law library. He argues that his case is becoming more complicated, and he will need an expert and the opinions of other doctors who would prescribe him hydrocodone. Plaintiff states he is not smart enough to show the Court he is being medically abused.

The request of court recruited counsel is **DENIED.** *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). The Court continues to find that during these early stages of the case, Plaintiff is capable of proceeding pro se. Discovery on the merits is currently stayed until the issue of exhaustion has been resolved. Based on Plaintiff's filings, he is able to respond to the issue of whether he properly utilized the administrative grievance process prior to initiating this lawsuit,

which is usually a straight-forward argument that does not require the need for counsel or extensive legal research.

## DISPOSITION

As stated above and on the record, the Motion for Preliminary Injunction filed by Plaintiff is **DENIED.** (Doc. 41). The request for counsel is **DENIED.** (Doc. 49).

**IT IS SO ORDERED.**

**DATED:** December 20, 2023

         *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**